NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MANHARLAL PATEL AND DINESH PATEL, | : : : : | |
| Plaintiffs, | : : | Civil Action No. 12-03005 (JAP) |
| v. | : : : | **OPINION** |
| ORWEST COURTLAND, INC., et al., | : : | |
| Defendants. | : : | |

PISANO, District Judge.

This is an action brought by Plaintiffs Manharlal Patel and Dinesh Patel ("Plaintiffs") against Defendants Orwest Cortlandt, Inc., Orwest Realty, Corp., Orwest Peekskill, Inc., Ralph DiBart, Vincent Concra and certain unidentified individuals (collectively, "Defendants") for breach of contract, breach of implied duty of good faith and fair dealing, negligent misrepresentation, fraud, and violations of the New Jersey Consumer Fraud Act ("CFA") in connection with two lease agreements between the parties.  Presently before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).  Plaintiffs oppose the Motion.  The Court decides these matters without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Court finds that the forum selection clause contained in the parties' agreements is binding and, therefore, Defendant's Motion to Dismiss shall be granted.

## I.     Background

The following allegations are summarized from the Complaint, and must be taken as true in deciding this Motion to Dismiss.[1] On September 21, 2004, Plaintiff Manharlal Patel ("M. Patel") leased a gas station and convenience store located in Cortland, New York (the "Cortland Property") from Defendant Orwest Cortland, Inc. ("Orwest Cortland"). On the same day, Plaintiff Dinesh Patel ("D. Patel") leased a gas station and convenience store located in Peerskill, New York (the "Peerskill Property") from Defendant Orwest Peerskill, Inc. ("Orwest Peerskill"). Following a period of negotiations between Plaintiffs and Defendants Ralph DiBart and Vincent Concra,[2] the parties entered into two separate agreements for each property.

Specifically, M. Patel entered into an Environmental Compliance and Indemnification Agreement with Orwest Cortland and D. Patel entered into an ECI Agreement with Orwest Peerskill (collectively, the "ECI Agreements"). The ECI Agreements contain certain representations and warranties regarding the environmental aspects of the leased properties, as well as various additional terms governing the leases. In a section entitled "Governing Law," the ECI Agreements provide that they "will be interpreted in accordance with the laws of the State of New York, excluding its conflict of laws rules." They further provide that Plaintiffs:

> HEREBY IRREVOCABLY CONSENT TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT IN THE STATE OF NEW YORK IN A COUNTY OR JUDICIAL DISTRICT WHERE THE LESSOR MAINTAINS A BRANCH. . . . Lessee and Indemnitor acknowledge and agree that the venue provided above is the most convenient forum for Lessor, Lessee and Indemnitor. Lessee and Indemnitor waive any objection to venue and any objection based on a more convenient forum in any action instituted under this Agreement."

*See* Def. Exs. 3-4 at ¶ 12 (capitalization in original).

---

[1] *See Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1301 (3d Cir. 1996).

[2] Defendants Ralph DiBart and Vincent Concra are the co-founders and former principals of the corporate Defendants.

In addition to the ECI Agreements, M. Patel entered into an Escrow Agreement with Orwest Cortland and Oxman Tulis Kirkpatrick Whyatt & Geiger LLP (the "Escrow Agent") and D. Patel entered into an Escrow Agreement with Orwest Peerskill and the Escrow Agent. The Escrow Agreements each reference and incorporate the terms of the parties' respective ECI Agreements. And in a section entitled "Applicable Law," the Escrow Agreements provide that they "shall be governed by, and construed in accordance with, the laws of the State of New York." Def. Exs. 1-2 at ¶ 9.

The Escrow Agreements required the Plaintiffs to deposit certain sums of money into escrow, to be controlled by the Escrow Agent. These sums were to be disbursed only under certain circumstances. Specifically, the funds could be disbursed: 1) if there was a breach of the Escrow Agreement or the ECI Agreement; 2) by mutual consent of the parties; or 3) pursuant to court order. In accordance with the terms of the Escrow Agreements, M. Patel deposited $100,000 into escrow and D. Patel deposited $75,000 into escrow.

In 2007, M. Patel sold and transferred the lease for the Cortland Property to another company, HKS, Inc. ("HKS"), which is not party to this lawsuit. Plaintiffs allege that HKS had purchased the Cortland Property from Defendants prior to the sale and transfer, but did not apprise Plaintiffs of that fact. Plaintiffs further allege that Defendants promised to return the entire $100,000 that had been placed in escrow by M. Patel, but failed to do so.

Several years later, in 2011, D. Patel sold and transferred the lease for the Peerskill Property to an unidentified buyer. Prior to the sale, Defendants purportedly promised D. Patel that, if he found a buyer for the property, they would provide him with a 10% finder's fee from the sale. Plaintiffs allege that D. Patel found a buyer for the Peerskill Property and referred him to Defendants. They further allege that this buyer purchased the Peerskill Property from

Defendants, but Defendants never provided D. Patel with the finder's fee, which amounted to $47,500. Plaintiffs also claim that Defendants failed to return $43,000 of the $75,000 that had been placed in escrow by D. Patel, despite having agreed to do so.[3]

On May 18, 2012, Plaintiffs commenced this action. They allege breach of contract, breach of implied duty of good faith and fair dealing, negligent misrepresentation, fraud, and violations of the CFA. On July 25, 2012, Defendants moved to dismiss the Complaint.

## II.     Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. In deciding a Motion to Dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the Plaintiff's favor. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994).

In 2007, the Supreme Court refashioned the standard for addressing a motion to dismiss under Rule 12(b)(6). *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). The *Twombly* Court stated that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 555 (internal citations omitted); *see also Baraka v. McGreevey,* 481 F.3d 187, 195 (3d Cir. 2007). More recently, the Supreme Court has emphasized that, when assessing

---

[3] Plaintiffs concede that the remaining portion of the $75,000 was utilized for the installation of a new gas system and environmental testing at the Peerskill Property and, therefore, they do not seek the return of these funds.

the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, the Court's task in assessing a motion to dismiss requires it to disregard any material beyond the pleadings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). A district court may, however, consider the factual allegations within other documents, including those described or identified in the Complaint and matters of public record, if the Plaintiffs' claims are based upon those documents. *See id.* at 1426; *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (the Court can properly consider the "complaint, exhibits attached to the complaint, matters of public record, as well as indisputably authentic documents if the complainant's claims are based upon these documents."). Accordingly, in resolving this motion, the Court shall consider the ECI Agreements and Escrow Agreements entered into by the parties.[4] These agreements created the relationship between the parties from which this action arose and are integral to the allegations pleaded in the Complaint. Therefore, the Court relies on these documents in deciding the Motion to Dismiss.

### III.   Legal Discussion

The Supreme Court has held that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *See Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10) (1972)). A forum selection clause is reasonable unless the objecting party can make a strong showing that: 1) the specified forum is "so gravely difficult and inconvenient that he will for all practical purposes be deprived

---

[4] Defendants attached the four agreements to their Motion to Dismiss. Plaintiffs do not dispute the authenticity of these documents and, indeed, reference them in their Opposition brief.

of his day in court;" or 2) "that the clause was procured through 'fraud or overreaching.'" *Id.* at 1219. As the party challenging enforcement of the forum selection clause in this case, Plaintiffs bear the burden of proving why they should not be bound by their contractual choice of forum. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) ("Where the forum selection clause is valid, which requires that there have been no 'fraud, influence or overweening bargaining power,' the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum.") (citations and quotations omitted).

Here, the ECI Agreements' forum selection clause explicitly provides that the ECI Agreements "will be interpreted in accordance with the laws of the State of New York" and states that the parties "IRREVOCABLY CONSENT TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT IN THE STATE OF NEW YORK."  (capitalization in original).  The forum selection clause further provides that Plaintiffs "waive any objection to venue and any objection based on a more convenient forum in any action instituted under this Agreement."  The Escrow Agreements references and incorporates the terms of the ECI Agreements.  Thus, the Court shall enforce the forum selection clauses in the agreements unless Plaintiffs prove that they are patently unreasonable.  *See M/S Bremen*, 407 U.S. at 12-13, 18.

Plaintiffs make several arguments in asserting that the Court should not enforce the forum selection clause in the ECI Agreements.  They claim that Defendants fraudulently induced them into entering into the ECI Agreements and the Escrow Agreements by failing to disclose the fact that the Escrow Agent was the Defendants' former attorney.  Plaintiffs further assert that the forum selection clause should be disregarded since the chosen state, New York has no substantial relationship to the transaction or the parties and/or the chosen law, New York, would

conflict with public policy of a state having a greater interest in the matter.  Lastly, Plaintiffs claim that litigation in New York would be "seriously inconvenient" for Plaintiffs.

Having considered these arguments, the Court finds that Plaintiffs fail to satisfy the "heavy burden of proof" required to strike as invalid the forum selection clause contained within the ECI Agreements.  *See Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991).  This provision was one clause within several agreements between savvy business individuals.  Plaintiffs have offered no proof that their ability to negotiate for a fair agreement was compromised in any way or that they ever objected to the choice of law and choice of forum provisions in the ECI Agreements or the Escrow Agreements.  Nor have Plaintiffs proffered any evidence to support their claim that the forum selection clause was included in the ECI Agreements as a result of fraud.  *See MoneyGram Payment Sys. v. Consorcio Oriental S.A.*, 65 Fed. App'x 844, 847 (3d Cir. 2003) (Plaintiffs' "mere allegation of fraudulent conduct does not suspend operation of a forum selection clause."); *see also Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc.*, 825 F. Supp. 671, 675 (D.N.J. 1993) (quotations omitted) (finding that allegations of fraud will not invalidate a forum selection clause absent proof that "the *inclusion of that clause* in the contract was the product of fraud or coercion.") (emphasis in original).

Moreover, the Court is not persuaded that Plaintiffs will be denied recourse if required to litigate in New York or that litigating in New York would be so inconvenient as to deny them their day in court.  Plaintiffs have not made any showing, let alone a strong showing, that requiring them to appear in the agreed-upon forum is unreasonable.  Presumably, Plaintiffs were aware of the distance from their homes in New Jersey to the State of New York when they signed the ECI Agreements.  Furthermore, the gas stations that are the subject of the ECI Agreements are located in New York and New York law governs the transactions.  While the

Court recognizes that Plaintiffs may now prefer to litigate in New Jersey, such a desire is insufficient to invalidate a forum selection clause that was knowingly agreed to after a period of arms-length negotiations. Accordingly, venue does not lie in New Jersey and Plaintiffs' Complaint is dismissed in its entirety.

Having determined that the parties are necessarily bound by their contracted-for forum as specified in the forum selection clause in the ECI Agreements, the Court grants Defendants' motion to dismiss on that basis. Accordingly, the Court does not need to reach the merits of Defendants' alternative arguments in support of dismissal, and declines to do so here.

### IV.   Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss will be granted. An appropriate Order follows.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: February 6, 2013